IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Melanie McKay,**

    Plaintiff,

v.

**DHM Research, Inc.,**

    Defendant.

**No. 6:20-CV-01249-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Melanie McKay brings this putative class action alleging that Defendant DHM Research, Inc., violated the Telephone Consumer Protection Act ("TCPA") by sending her an unsolicited marketing text message. Pl.'s Compl. 1, ECF No. 1. Defendant now moves to stay the proceedings, pending the outcome of *Facebook, Inc. v. Duguid* in the United States Supreme Court. Def.'s Mot. Stay Proceedings 2, ECF No. 9. Because the question in *Facebook* does not directly bear on this matter, the Court DENIES Defendant's motion to stay, ECF No. 9.

## STANDARDS

The movant bears the burden of showing a stay is needed. *Clinton v. Jones*, 510 U.S. 681, 708 (1997). When considering a motion to stay, the Court weighs three competing interests: (1) the possible damage which may result from granting a stay, (2) the hardship or inequity that a party may suffer if required to go forward, and (3) whether the stay simplifies or complicates the issues, proof, and questions of law. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936)). As a general matter, having to litigate is not itself a hardship warranting the stay of a case. *Dependable Hwy. v. Navig.*, 498 F.3d 1059, 1066–70 (9th

1 – OPINION AND ORDER

Cir. 2007). In considering a motion to stay, the Court exercises its inherent power to control its docket in a manner that "promote[s] efficient use of judicial resources." *Id.* at 1066. But if the moving party fails to show that it will suffer a "hardship or inequity" and there is even a "fair possibility" that the nonmoving party will suffer damage, a stay may be inappropriate, regardless of the Court's desire to control its docket. *Id.*

## DISCUSSION

In *Facebook*, the Supreme Court is set to resolve a circuit split over the definition of the term "automated telephone dialing system" ("ATDS"). *Canady v. Bridgecrest Acceptance Corporation*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263 *1 (D. Ariz. 2020); *See Facebook v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020), *and* Petition for Writ of Certiorari, *Facebook*, 2019 WL 5390116 (No. 19-511). The TCPA defines ATDS as "equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The circuit split hinges on whether the phrase "using a random or sequential number generator" modifies "store or produce" or modifies only "produce." *Canady*, 2020 WL 5249263, at *1.

Defendant argues that the outcome of *Facebook* bears directly on the present litigation. At the same time, Defendant also claims that the equipment it used to place the text message to Plaintiff's phone is not an ATDS at all. Rather, they argue it is a "'peer-to-peer' system [that] does not have the capacity to store or produce numbers, cannot dial random or sequential numbers, . . . [or] be used to dial any number without human intervention." Def.'s Mot. 3–4. Because Defendant contends that its equipment is not an ATDS, it is not clear how the outcome of *Facebook* would simplify any questions here.

While district courts have stayed some cases pending the outcome in *Facebook*,[1] those cases tend to either bear factual similarity to *Facebook*,[2] or both parties assented to the stay.[3] Defendant's reliance on *Reynolds v. Geico Corporation* is misplaced. No. 2:16-cv-01940-SU, 2017 WL 815238 (D. Or. March 1, 2017). Though the *Reynolds* plaintiff advanced similar arguments opposing a stay to no avail, the circumstances were not "virtually identical" to those here, as Defendant asserts. Def.'s Reply Supp. Mot. Stay Proceedings 3, ECF No. 11. The key difference is that *ACA International*, the pending litigation at issue in *Reynolds*, addressed the TCPA more broadly than the narrow issue in *Facebook*. *ACA International v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018). *ACA International* addressed not only "whether defendant used an ATDS as defined by the TCPA" but also "whether defendant would be liable for allegedly sending text messages to a reassigned telephone number . . . [and] how consent to receive messages may be revoked." *Reynolds*, 2017 WL 815238, at *2. In *Reynolds*, the "plaintiff's predecessor to her phone number . . . had provided consent to receive messages, not plaintiff, [and] plaintiff asked defendant to cease sending text messages not by replying with 'STOP,' as messages had instructed, but by sending an email to customer support." *Id.* Thus, *ACA International* implicated whether the initial consent absolved the defendants of liability and whether the plaintiff's revocation of that consent was effective. *Id.*

---

[1] *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263 (D. Ariz. October 2, 2019); *In re Portforlio Recovery Assocs., LLC, Telephone Consumer Protection Act Litigation,* No. 11md02295 JAH–BGS, 2020 WL 5223545 (S.D. Cal. July 27, 2020), *Veytia v. Portfolio Recovery Assocs.*, LCC, 20-CV-0341-GPC-MSB, 2020 WL 5257881 (S.D. Cal. Sept. 3, 2020).
[2] In *Canady*, as in *Facebook*, the defendant sent seemingly automated messages to the plaintiff's cell phone regarding an account, ostensibly belonging to the plaintiff. *Canady*, 2019 WL 7556340 at *2. Yet as in *Facebook*, the plaintiff did not have an account with defendant. Pl. Resp. Opp'n Mot. Compel Arb. and Stay Proceedings at 2, *Canady*, 2019 WL 7556336 (No. 2:19-cv-04738-DWL); Petition for Writ of Certiorari at *8, *Facebook*, 2019 WL 5390116 (No. 19-511). Here, the message in question was an unsolicited attempt to recruit Plaintiff to participate in a survey. Def. Mot. 4. Because of the similarity between the messages, it is reasonable to conclude that the outcome of *Facebook* would bear on the outcome of *Canady*, but as explained above, the connection between *Facebook* and this action is less clear.
[3] *In re Portforlio Recovery Assocs.*, 2020 WL 5223545, at *1 ("Plaintiff does not oppose the motion."); *Veytia*, 2020 WL 5257881, at *1 ("[T]he Parties filed a joint motion seeking to stay the instant dispute . . .").

*Facebook* narrowly focuses on whether an ATDS is a system that uses a random or sequential number generator to store numbers or whether it is one that simply stores numbers, using no type of number generator. Defendant asserts that its system does neither. Def.'s Mot. 4. Eventually, Defendant will have to submit to discovery to show this, regardless of *Facebook*'s outcome. Defending itself now may exacerbate Defendant's pandemic-related financial strain, but "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity," *Lockyer v. Mirant Corp.*, 398 F.3d 1090, 1112 (9th Cir. 2005). Nor does Defendant suggest that its financial situation will change appreciably in the coming months. Def.'s Mot. 9; Def.'s Reply 6. Defendant has not shown that *Facebook* will simplify this matter or that Defendant will suffer a hardship that a stay could remedy.

Because Defendant has not met its burden of proof, any delay in resolution presents a fair possibility of damage to Plaintiff. A stay is therefore inappropriate.

## CONCLUSION

For the above reasons, Defendant's motion to stay this action, ECF No. 9, is DENIED. The parties are to confer and file a joint status report with new deadlines within fourteen days of this Opinion and Order.

IT IS SO ORDERED.

Dated this 11th day of December, 2020.

                                            _____/s/ Michael McShane_____
                                            Michael McShane
                                            United States District Judge